UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

U.S. DISTRICT COURT
DISTRICT OF MAINE
PORTLAND
RECEIVED & FILED

2019 MAY 24 P 2: 29

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 2:18-cr-00062-JDL |
| | ) |
| GARAT OSMAN | ) |

## GOVERNMENT'S VERSION OF THE OFFENSE

Had the case proceeded to trial, the evidence would have shown beyond a reasonable doubt that from approximately December 2016 through approximately December 2017, this defendant conspired with other persons in a scheme to defraud MaineCare in connection with the delivery of or payments for healthcare services.

The evidence would include testimony from lay witnesses, law enforcement personnel involved in the investigation, and public agency records and recordings of meetings made by law enforcement personnel. This evidence would establish the facts outlined below.

For all times relevant to this case, Medicaid was a health care benefit program funded with federal and state funds. It was administered by the U.S. Department of Health and Human Services and by state agencies. In Maine, Medicaid was part of MaineCare and was administered by the Maine Department of Health and Human Services.

Defendant Osman was an interpreter who provided interpreter services in conjunction with services provided by MaineCare approved healthcare providers of mental health counseling.

MaineCare would reimburse healthcare providers who used interpreter services when interpretation services were necessary and reasonable for the provider to communicate effectively with members regarding health needs. Interpreter services were only covered in

conjunction with another MaineCare covered service. Interpreter services were billed in units of 15 minute intervals.

In 2017, defendant formed a company named Gold Star Interpreting, LLC ("Gold Star"). Defendant was listed as the sole owner of Gold Star.

MaineCare data shows that from December 2016 through approximately June 2017, a provider with whom defendant was providing interpreter services was submitting claims for 10 units each which meant the provider claimed each visit lasted 2.5 hours. These claims were fraudulent because the visits were substantially shorter in duration than 2 ½ hours.

In the spring of 2017, investigators conducted surveillance on this provider's office on several occasions. On some days, the investigators observed no clients visit the office. On at least one occasion, they observed that the office appeared to be closed. On occasions where the investigators observed any clients visit the practice, the agents observed that the visits were very brief, lasting approximately 10-15 minutes. After the agents conducted surveillance, they reviewed the claims submitted by this provider on the dates of surveillance and they discovered that on each of these days, the provider submitted claims for numerous patient visits (and interpreter services) that each lasted 2.5 hours.

In June 2017, investigators interviewed this provider. She admitted that she had been submitting false claims to MaineCare since 2015 for both her services and the interpreter services. She admitted that she submitted claims for visits that never occurred. She further admitted that many of her visits were short visits but that she billed every visit for 2.5 hours.

In July 2017, this provider met with defendant and a co-conspirator interpreter and they discussed an arrangement where defendant would bring Somali patients to the provider and that the provider would bill 7 units even though the visits would be much shorter in duration.

Case 2:18-cr-00062-JDL   Document 150   Filed 05/23/19   Page 3 of 4   PageID #: 494

Specifically, on July 26, 2017, the provider stated that she would bill for seven units for each visit even though the visits would be shorter. Both defendant and the co-conspirator replied "yes". Investigators recorded these discussions between the provider and the defendant. After making this agreement, defendant and the co-conspirator brought some Somali patients to this provider over the course of several days. The visits were very short (lasting no more than approximately 15-20 minutes). The defendant provided documentation to the provider that falsely stated the time of the visits lasted 7 units; in addition, the co-conspirator provided documentation claiming interpreter services were provided for other persons that the provider did not see. The provider paid Gold Star for all these false and fraudulent claims using law enforcement provided funds. The last payment was in December 2017.

A review of Mainecare data reveals that MaineCare reimbursed the provider for the false and fraudulent claims she submitted from December 2016 until June 2017 for services and the interpreter services. Bank records show that the provider paid Gold Star or the co-conspirator for the false and fraudulent interpreter claims that the provider submitted.

Dated at Portland, Maine this 23rd day of May, 2019.

> HALSEY B. FRANK
> UNITED STATES ATTORNEY
>
> /s Daniel J. Perry
> Daniel J. Perry
> Assistant U.S. Attorney
> U.S. Attorney's Office
> 100 Middle St.
> Portland, ME 04101

## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

### CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2019 I filed the foregoing Government's Version of the Offense via ECF which will cause a copy to be sent to the following:

Toby Dilworth, Esq.

/s/Daniel J. Perry
Assistant United States Attorney