**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | No. 2:18-cr-00062-JDL |
| ) | |
| **NANCY LUDWIG** ) | |

**GOVERNMENT'S TRIAL BRIEF**

**I.   STATUS OF THE CASE**

    A.    This matter is scheduled for jury selection on June 3, 2019, before the Honorable John H. Rich III, United States Magistrate Judge. Trial is scheduled to commence on June 10, 2019, before the Honorable Jon D. Levy, United States District Judge.

    B.    The Government expects to call approximately 20 witnesses.

    C.    The Government expects to complete its case-in-chief in approximately four days.

**II.   STATEMENT OF THE CASE**

On November 16, 2018, a grand jury returned a Superseding Indictment charging the remaining defendant with the following offenses:

| Count | Offense |
|---|---|
| 4 | 18 U.S.C §1349 – Conspiracy to Commit Health Care Fraud |
| 6 | 18 U.S.C. §371 – Conspiracy to Commit Offense Against the United States (Paying/Receiving Kickbacks) |
| 21-25 | 42 U.S.C. § 1320a-7b - Paying Kickbacks |
| 26 | 18 U.S.C. §1035 – False Statement to a Health Care Program |
| 27 | 18 U.S.C.§1516 – Obstruction of a Health Care Audit |

### III. OVERVIEW OF THE OFFENSES

For all times relevant to this case, Medicaid was a health care benefit program funded with federal and state funds. It was administered by the U.S. Department of Health and Human Services and by state agencies. In Maine, Medicaid was part of MaineCare and was administered by the Maine Department of Health and Human Services.

Healthcare providers would apply to MaineCare for approval to seek reimbursement for services provided to MaineCare beneficiaries. A MaineCare approved provider would then be assigned a provider number which the provider would use to submit claims to MaineCare for reimbursement.

MaineCare would reimburse providers for interpreter services when interpretation services were necessary and reasonable for a provider to communicate effectively with members regarding health needs. Interpreter services were only covered in conjunction with a clinical MaineCare covered service. Interpreters were not assigned a MaineCare provider number – the medical services provider would submit a claim for interpreter services and MaineCare would pay the healthcare provider who in turn would compensate the interpreter.

Both counseling services and interpreter services were billed in units of time. Each "unit" was 15 minutes. MaineCare reimbursed $20 per unit for interpreter services.

CIS is a MaineCare case management service for adults with mental health issues. Case managers link mental health clients with community clinical providers, assist in the coordination of client care among treatment providers and link clients to crisis services. This service is provided by certified Mental Health Rehabilitation Technicians/Community. MaineCare reimburses a provider approximately $20 per 15 minute unit of CIS services.

Facing Change, P.A. was a behavioral health agency in Maine that provided services to a number of MaineCare beneficiaries. Defendant Ludwig was the owner of Facing Change.

2

Ludwig was also a MaineCare approved provider for mental health counseling. Facing Change employed numerous mental health counselors and case managers. In 2013, Facing Change began providing services to a significant number of patients who were MaineCare beneficiaries that utilized an interpreter. One of the interpreters used by Facing Change was Abdirashid Ahmed.

In approximately February 2015, Ludwig and Ahmed made an agreement in which the Ahmed agreed to continue to bring MaineCare beneficiaries for services at Facing Change in exchange for a weekly payment of 10% above and beyond the amount due for services rendered by Ahmed. Around approximately December 23, 2015, Jared Lemieux, Ludwig's son, who was a director of Facing Change, and Ahmed executed a signed agreement that memorialized the agreement previously entered into by Ludwig and the Ahmed.

Billing records obtained from Facing Change reveal that Facing Change paid the 10% premium weekly to Ahmed from approximately February 2015 until approximately late April 2016. A handwritten note bearing Ludwig's signature addressed to Ahmed indicated that Ludwig was terminating the 10% payment because she no longer felt good about the arrangement. The note also indicated that Ludwig agreed to pay Ahmed an additional $2400.

In the spring of 2016, MaineCare changed the eligibility requirements for Community Integration Services (CIS). Specifically, MaineCare changed the diagnoses that would establish eligibility for CIS. Prior to the eligibility change, most of Abdi's client were diagnosed with the primary diagnosis of Post-Traumatic Stress Disorder (PTSD). In response to this change, Ludwig diagnosed many of Abdi's clients with schizophrenia or schizoaffective disorder which were a qualifying diagnoses under the new rules. The evidence will show that personnel at

3

Facing Change manufactured and back dated clinical documentation to support this the new diagnoses.

KePro is the contracted DHHS pre-authorization entity for MaineCare. Providers must submit request for units of behavioral health/mental health services to KePro, only authorized services are eligible for MaineCare reimbursement. KePro has trained, credentialed clinical staff that review the requests for MaineCare services. KePro clinical staff identified a trend of Facing Change, Section 17 clients receiving significant diagnoses changes after the MaineCare eligibility change. KePro found most were unsupported in the clinical record. KePro filed a fraud report with the Maine Attorney General's office due to their concerns.

In 2016, MaineCare auditors audited Facing Change. As part of the audit, on several occasions, the auditors requested documentation related to claims Facing Change had submitted to MaineCare for reimbursement. In response to these requests, including in December 2016, Facing Change personnel, including Ludwig, created or altered documentation to make it appear the documentation was created at an earlier date. Facing Change then presented this documentation to the auditors to make it appear that Facing Change had maintained the documentation in the ordinary course of business.

### IV.   STATUTES VIOLATED

a. Title 18, United States Code, Section 1347 provides in pertinent part:

> Whoever, knowingly and willfully, executes a scheme or artifice to defraud any health care program or to obtain, by means of false or fraudulent pretenses, representations, or promises any of the money or property owned by, or under the custody or control of, any health care benefit program, shall be fined under this title or imprisoned not more than 20 years, or both.

b. Title 18, United States Code, Section 1349 provides in pertinent part:

4

    Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

c. Title 18, United States Code, Section 371 provides in pertinent part:

If two or more persons conspire either to commit any offense against the United States … and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title and be imprisoned for not more than 5 years, or both.

d. Title 18, United States Code, Section 1035 provides in pertinent part:

Whoever, in any matter involving a health care benefit program, knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact; or makes any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 5 years, or both.

e. Title 18, United States Code, Section 1516 provides in pertinent part:

Whoever, with intent to deceive or defraud the United States, endeavors to influence, obstruct, or impede a Federal auditor in the performance of official duties relating to a person, entity, or program receiving in excess of $100,000, directly or indirectly, from the United States in any 1 year period under a contract or subcontract, grant, or cooperative agreement… shall be fined under this title, or imprisoned not more than 5 years, or both.

f. Title 42, United States Code, Section 1320a-7b provides in pertinent part:

Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $100,000 or imprisoned for not more than 10 years, or both.

## V. ELEMENTS OF THE OFFENSES CHARGED

### Count 4: Conspiracy to Commit Health Care Fraud, 18 U.S.C. § 1349

In order to prove a conspiracy under 18 U.S.C. § 1349, the Government must establish the following elements: (a) that the agreement specified in the Indictment existed between at least two people to commit the offense of health care fraud; and (b) that the Defendant willfully joined in that agreement. There is no overt act requirement for a conspiracy charged under section 1349. See e.g., United States v. Berger, No. 09-308, 2010 U.S. Dist. Lexis 112062 (W.D. Pa. Oct 21, 2010) (citing Whitfield v. United States, 543 U.S. 209 (2005)).

### Count 6: Conspiracy to Defraud the United States, 18 U.S.C. § 371

In order to prove a conspiracy under 18 U.S.C. §371, the Government must establish the following three elements: (a) that the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people to pay/receive kickbacks; (b) each defendant willfully joined in that agreement; and (c) one of the conspirators committed an overt act during the period of the conspiracy in an effort to further the purpose of the conspiracy.

### Count 26: False Statements Relating to a Health Care Matter

In order to prove an offense under 18 U.S.C. §1035, the Government must establish the following elements: (a) That the defendant made or used any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; (b) the defendant did so in connection with the delivery of or payment for health care benefits, items, or services involving a health care benefit program; and (c) the defendant did so knowingly and willfully. Pattern Crim. Jury Instr. 5th Cir. 2.50 (2015), Pattern Crim. Jury Instr. 5th Cir. 2.50 (2015).

**Count 27: Obstruction of a Federal Audit**

In order to prove an offense under 18 U.S.C. §1516, the Government must establish the following elements: (a) that the defendant endeavored to influence, obstruct or impede a federal auditor in the performance of official duties; (b) that the auditor's duties related to a person, entity, or program receiving in excess of $100,000, directly or indirectly, from the United States in any one year period under a contract or subcontract, grant, or cooperative agreement, … and (c) that the defendant did so with intent to deceive or defraud the United States.

Eric Wm. Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* § 1516 (2018 Online Edition).

**Counts Twenty-One -Twenty-Five: Paying Kickbacks Title 42 USC 1320a-7b**

In order to prove an offense for paying kickbacks under 42 U.S.C. §1320a-7b, the Government must establish the following elements: (a) the defendant knowingly and willfully paid money; (b) the money was paid primarily in order to induce or in exchange for a referral of a patient insured by a federal health care program; (c) and the patient's services were covered, in whole or in part, by a federal health care program.

Model Crim. Jury Instr. 8th Cir. 6.42.1320 (2018), Model Crim. Jury Instr. 8th Cir. 6.42.1320 (2018)

## VI. EVIDENTIARY MATTERS

### A. Patient Records

At trial, the Government will offer patient records. These records were obtained from Facing Change, or from a Government agency which obtained the records from Facing Change. Many of these exhibits will not be offered for the truth of the matter so those exhibits will not be hearsay, by definition. To the extent a patient record is offered for the truth of the matter asserted, these records fall within the exceptions to the rule

7

against hearsay. "'Hearsay' is a statement ... offered in evidence to prove the truth of the matter asserted." Rule 801(c). A "statement" is as "an oral or written assertion." Rule 801(a). "Nothing is an assertion unless intended to be one." Fed.R.Evid. 801 advisory committee's note.

    Rule 803(6) of the Federal Rules of Evidence provides that:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or method or circumstances of preparation indicate lack of trustworthiness. The term "business" used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

    Rule 902(11) of the Federal Rules of Evidence provides that:

> Certified Domestic Records of Regularly Conducted Activity.--The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record--
>
> (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;
>
> (B) was kept in the course of the regularly conducted activity; and

8

> (C) was made by the regularly conducted activity as a regular practice.
>
> A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

Other circumstances of the making of document or data compilation, including lack of personal knowledge of the entrant or maker, may be shown to affect its weight, but not affect its admissibility. Stone v. Morris. 546 F.2d 730, 739 (7th Cir. 1976). If the records were prepared under circumstances which demonstrate trustworthiness, it is not necessary that the one who kept the record, or even had supervision over their preparation, actually testify to establish foundation for admission under Fed. R. Evid. 803(6). See United States v. Flom, 558 F.2d 1179, 1182 (5th Cir. 1977); United States v. Pfeiffer, 539 F.2d 668, 670-71 (8th Cir. 1976); United States v. Carranco, 551 F.2d 1197, 1199 (10th Cir. 1977). The custodian of records called to testify need not have been the custodian when the documents were made, nor have been in the employ of the business at the time the records were made. See, e.g., United States v. Scallion, 533 F.2d 903, 915 (5th Cir. 1976); United States v. Evans, 572 F.2d 455, 488 (5th Cir. 1978). In light of the complexities of modern business, direct proof of actual knowledge of the person making the record or providing the information is not required, and the requisite knowledge may be inferred from the fact that it was someone's business to obtain such information. United States v.Lieberman, 637 F.2d 95, 100 (2nd Cir. 1980). The presiding judge is vested with broad discretion in determining the admissibility of records under Rule 803(6). See Evans, 572 F.2d at 490; United States v. Jones, 554 F.2d 251, 252 (5th Cir.

1977); United States v. Carranco, 551 F.2d at 119.

### B. Duplicates and Redactions

The Government intends to introduce copies of the patient files rather than introduce the original file. The Government has scanned in the patient files so now each page of the patient file has a Bates Number. Further, the electronic duplicate will allow the Government to redact Personal Identifying Information (PII). The last 4 numbers of the social security number and MaineCare beneficiary number will not be redacted. The Government intends to identify the patients only by first name so the last name will also be redacted. Federal Rule of Evidence 1003 states that "[A] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or circumstances make it unfair to admit the duplicate."

### C. Non-expert Opinion on Handwriting.

Pursuant to Federal Rule of Evidence 901(b)(2), a witness who is not an expert may identify signatures or handwriting if the witness is sufficiently familiar with the signature or handwriting. See United States v. Scott, 270 F.3d 30, 49 (1st Cir. 2001). A witness' knowledge of the other person's handwriting can be acquired by any means, so long as it is not obtained especially for trial. 270 F.3d at 49-50. Under Rule 901(b)(2), if a witness testifies to being familiar with another person's handwriting, and describes a relationship or circumstances from which the familiarity has been acquired, the testimony should be permitted. Id. see also United States v. Barker, 735 F.2d 1280, 1283-84 (11th Cir. 1984)(co-workers' testimony properly admitted); United States v. Gallagher, 576 F.2d 1028, 1048 (3d Cir. 1978) (supervisor permitted to testify).

### D. Hostile Witnesses

Federal Rule of Evidence 611(a) allows the Court to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment. Fed. R. Evid. 611(a). Additionally, "[w]hen a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions." Fed. R. Evid. 611(c). Federal Rule of Evidence 611(c) significantly enlarged the class of witnesses presumed hostile. See Haney v. Mizell Memorial Hospital, 744 F.2d 1467, 1477-78 (11th Cir. 1984)(witness present when malpractice allegedly occurred; although not liable, her relation to hospital defendant and potential hostility enough to allow treatment as hostile witness). Immunized witnesses are hostile witnesses. See, e.g., United States v. Lawrence, 934 F.2d 868, 872 (7th Cir. 1991)(government witness testifying under a grant of immunity is hostile); United States v. Diaz, 662 F.2d 713, 718 (11th Cir. 1981)(immunized witness hostile to government; therefore, court refused to declare witness hostile to defense); In re Grand Jury Subpoena, 81 F.R.D. 691, 695 (S.D.N.Y. 1979)(witnesses refusing to testify absent immunity may generally be described as hostile witnesses). Here, CW-1 still works at CAP. See United States v. Olivo, 69 F.3d 1057, 1065 (10th Cir. 1995). Even former employees of CAP may be declared hostile. See Stahl v. Sun Microsystems, Inc., 775 F. Supp. 1397 (D. Colo. 1991). Some witnesses may not only be reluctant to testify, they may also be reluctant to tell the truth unless continually probed with multiple questions. In such a situation, the Court may need to exercise its discretion under Rules 611(a) and (c) to avoid undue consumption and waste of the jury's time.

### E.  Summaries of Evidence

The Government may offer into evidence exhibits which summarize other documentary evidence or testimony. Rule 1006 of the Federal Rules of Evidence provides for the admission of such summaries. United States v. Johnson, 54 F.3d 1150, 1158 (4th Cir. 1995) (summary charts may summarize documents and/or the testimony of witnesses or documents); United States v. Goldberg, 401 F.2d 644, 647-48 (2d Cir. 1968) (same). Summarized documents do not have to be admitted into evidence, but must constitute admissible evidence, and be available for examination and copying by the defense and production in court, if so ordered. See Fed. R. Evid. 1006;  United States v. Conlin, 551 F.2d 534, 538 (2d Cir. 1977);  United States v. Johnson, 594 F.2d 1253, 1254 (9th Cir. 1979).  In accordance with this Rule, courts have routinely allowed the Government to introduce charts and summaries based on the evidence. United States v. Nivica, 887 F.2d 1110, 1125 (1st Cir. 1989); United States v. Drougas, 748 F.2d 8, 25-26 (1st Cir. 1984). Such summaries may be provided to the jury for its use during deliberation.  Holland v. United States, 348 U.S. 121, 128 (1954); United States v. Pinto, 850 F.2d 927, 935-36 (2d Cir. 1988).

### F.  Stipulations

There may be stipulations. Because the better practice is to have a stipulation admitted into evidence rather than merely to have it filed with the Court, the United States will offer any stipulations as exhibits.  United States v. Hardin, 139 F.3d 813, 815-817 (11th Cir.1998). "Stipulations voluntarily entered by the parties are binding, both on the district court and on [the appeals court]." FDIC v. St. Paul Fire and Marine Ins. Co., 942 F.2d 1032, 1038 (6th Cir.1991) (citing Unicore, Inc. v. Tennessee Valley Auth.,

768 F.2d 109, 112 (6th Cir. 1985).

### VIII. CONCLUSION

This trial brief has covered matters which the Government believes will be of assistance to the Court. The Government requests leave of Court to file other such memoranda of law as may be necessary or appropriate.

Dated at Portland, Maine this 24th day of May, 2019.

                                   Respectfully submitted,

                                   HALSEY B. FRANK
                                   United States Attorney

                                   /s/ Daniel J. Perry
                                   Assistant United States Attorney
                                   United States Attorney's Office
                                   100 Middle Street
                                   Portland, Maine 04101
                                   (207) 780-3257
                                   dan.perry@usdoj.gov

# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

# CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2019, I caused the filing of the foregoing notice of appearance with the Clerk of Court, which sent such notice to the individuals and entities who have entered appearances in this case, pursuant to the Court's ECF system.

HALSEY B. FRANK
United States Attorney

/s/ Daniel J. Perry
Assistant United States Attorney
United States Attorney's Office
100 Middle Street
Portland, Maine 04101
(207) 780-3257
dan.perry@usdoj.gov